

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIAN N. JOHNSON, Plaintiff, v. ROSE TREE MEDIA SCHOOL DISTRICT, Defendant. | : | CIVIL ACTION NO. 06-3761 |

FILED
MICHAEL E. KUNZ, Clerk
By ________ Dep. Clerk

**MEMORANDUM**

Giles, J.

September 30, 2008

Plaintiff Marian N. Johnson alleges that Defendant Rose Tree Media School District discriminated against her on the basis of race and disability. On May 22, 2002, Plaintiff applied for the position of vice principal at the Springton Lake Middle School in the Rose Tree Media School District. Plaintiff was not interviewed or considered for the position. Plaintiff asserts that she was qualified for the job, having completed a principal's internship program at the Springton Lake School in May 2002. She asserts that she was screened out for the job due to her openly apparent hearing and sight disabilities. She also asserts that she was intentionally discriminated against due to her race, based on the school's alleged history of discrimination against African-American job candidates. Before the court is Defendant's Motion for Summary Judgment, which is GRANTED for the following reasons.

## I. Facts and Procedure

In May 2002, Ms. Johnson had recently completed a principal internship program at

Springton Middle School when she learned by word of mouth that the school had an opening for an assistant principal position. (Def.'s Mot. for Summ. J., Ex. 1, Johnson Dep. at 70, 83-84.) Ms. Johnson submitted an application to the receptionist in the administration building. (Id.) Ms. Johnson then, while she was in the building, saw the job posting for the position. (Id. at 84-86.) Included among the qualifications listed was the requirement: "Must be able to hear (40 decibels loss maximum), verbally communicate and see with near acuity of 20 inches or less and far acuity of 20 feet or more with depth perception, accommodation and field of vision." (Def.'s Mot. for Summ. J., Ex. 3, Job Posting for Assistant Principal.) Ms. Johnson believed this qualification had been added in an attempt to screen her out as ineligible for the position. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3.) She stated in her complaint that administrators at the School were aware of her hearing and sight impairments by virtue of working around her, seeing the hearing aids she wore daily, and noticing that the telephone she used in the school office was equipped with a special hearing device. (Am. Compl. ¶ 21.) She also stated she told the school counselor about her hearing disability. (Id.) Ms. Johnson argues that despite the School District's alleged attempt to screen her out for the position, Ms. Johnson believed she nonetheless met the hearing and sight requirements posted, through the use of corrective sight and hearing aids. (Def.'s Mot. for Summ. J., Ex. 1, Johnson Dep. at 124-25, 128-29.) Yet, she argues that the Rose Tree Media School District regarded her as disabled and discriminated against her on this basis. (Pl.'s Resp. to Def.'s Mot. for Summ. J at 12-13.)

Ms. Johnson, an African-American, also claims that the School District discriminated against her on the basis of race. In support of this claim, she alleges that the School District had a practice of losing or misplacing applications of African-Americans as "a way to avoid hiring

minorities." (Def.'s Mot. for Summ. J., Ex. 1, Johnson Dep. at 216-17.)

Ms. Johnson was not interviewed for the assistant principal position and another candidate was hired. That candidate, the School District states, met all of the qualifications for the position including, significantly, her having the status of an internal candidate, a status Ms. Johnson lacked. (Def.'s Mot. for Summ. J., Ex. 3, Job Posting for Assistant Principal; Def.'s Mot. for Summ. J., Ex. 10, Joanne Horan's Application Packet.) This complaint followed. Ms. Johnson filed her original complaint on August 23, 2006 and an amended complaint on August 15, 2007. Ms. Johnson brings her claims against the School District under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., as amended by the Civil Rights Act of 1991 and under the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 et seq. The School District filed a Motion to Dismiss on December 28, 2006 and a Motion to Dismiss the Amended Complaint on August 20, 2007. Both were denied, the second as moot, on September 19, 2007. The parties completed discovery on April 30, 2008 and Defendant filed its Motion for Summary Judgment on June 9, 2008.

**II. Legal Standard for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both 1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and 2) genuine, meaning the evidence must be such that a reasonable jury could

return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

**III. Ms. Johnson Does Not Have Viable Claim Under the Americans With Disabilities Act**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In disparate treatment cases where the plaintiff has no direct evidence of discrimination, the court applies the McDonnell Douglas burden-shifting test to determine the viability of the plaintiff's Title VII claim. Raytheon Co. v. Hernandez, 540 U.S. 44, 49-50 (2003); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The burden-shifting test is appropriate to evaluate claims on summary judgment. Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997). Under the McDonnell Douglas test, the plaintiff must first establish a *prima facie* case of discrimination. The *prima facie* case creates an inference of discrimination. The burden then shifts to the defendant employer to defeat the inference of discrimination with a legitimate, nondiscriminatory reason for its employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S.

502, 502 (1993). If the defendant succeeds, the plaintiff may offer evidence that the reason given is pretextual. Id.; Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

To establish a *prima facie* case of discrimination, the plaintiff must prove, first and foremost, that she is a disabled person.[1] The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff states that she is disabled under this third meaning provided by the ADA - being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities. She offers as evidence the School District's inclusion of sight and hearing requirements, for the first time, in the posting for the assistant principal position. Plaintiff put it this way: "Ms. Johnson is disabled also because Defendant considered her to be so. This inescapable conclusion is based on [sic] first time inclusion of hearing and sight limitations in the job posting for Assistant Principal of Springton Lake Middle School that exactly matched Ms. Johnson's hearing and sight disabilities. There is no other logical explanation for the sudden appearance of these two requirements." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10.)

The court need not consider the merits of this argument. The U.S. Supreme Court, in Sutton v. United Airlines, Inc., 527 U.S. 471 (1999), held that an alleged disability under the ADA must be evaluated in light of any mitigating measures taken to correct the impairment. 527

---

[1]A *prima facie* case under the first prong of the McDonnell Douglas test is established by three factors: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment decision because of the discrimination. Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998).

U.S. 471, 483 (1999). "To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." Sutton, 527 U.S. at 483. In order to qualify under the "regarded as" definition of disabled, the plaintiff would have to prove either that the defendant mistakenly believes that the plaintiff has a physical impairment that substantially limits a major life activity or defendant mistakenly believes that an actual, nonlimiting impairment substantially limits a major life activity. Id. at 487; Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007). Plaintiff must then prove that there was a causal link between the defendant's belief and its employment action. Wilson, 475 F.3d at 179. Ms. Johnson has not presented any evidence that the School District mistakenly believed that she was impaired within the meaning of the statute or that any such erroneous perception motivated the School District's employment action. She advances only the proposition that the School District may have been on notice to her hearing and sight impairments by the presence of her hearing and sight aids. Yet, the Defendant argues, and this court agrees, that it is the very presence of these mitigating measures that, by Ms. Johnson's own admission, corrected her impairments and demonstrate inescapably that she is not disabled, or mistakenly perceived as disabled, under the ADA.

Even if this court had found Ms. Johnson to be disabled under the meaning of the ADA and also that she had established a *prima facie* case of discrimination on the basis of her disability, her claim would nonetheless have to be denied at the second stage of the McDonnell Douglas analysis. There, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 502. Here, the School District has stated through deposition testimony, which is unopposed, that

it decided to fill the available position with an internal candidate for reasons of economic necessity. (Def.'s Mot. for Summ. J., Ex. 6, Warner Dep. at 17-19.) The School District explained that it found itself in the middle of a large budget crisis and endeavored to reduce the budget by eliminating a position through this internal hiring approach. (Id. at 17-22.) Ms. Johnson has not offered any evidence that the School District's stated reason is pretextual.

**IV. Ms. Johnson Does Not Have A Viable Title VII Claim**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) provides,

> It shall be unlawful employment practice for an employer - (1) to fail or refuse to hire...any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).

The court evaluates Ms. Johnson's Title VII claim according to the same McDonnell Douglas analysis applied to Ms. Johnson's ADA claim.[2] The first prong here concerns whether Ms. Johnson was qualified. The plaintiff must establish: (1) she is a member of a protected class, (2) she was qualified for the position to which she applied, (3) she was not hired despite her qualifications; and (4) the defendant continued to seek out individuals with qualifications similar to Plaintiff's to fill the position. McDonnell Douglas Corp., 411 U.S. at 802; Sarullo, 352 F.3d

---

[2] Ms. Johnson has pled only a disparate treatment claim, not a disparate impact claim, under Title VII. While a potential disparate impact claim may have been suggested by Ms. Johnson's attorney in conference, the case has never been prosecuted as such. Defendant has appeared to have briefed the issue as a matter of caution; the court does not address these arguments.

789, 798 (2003). Defendant argues that Ms. Johnson was not qualified for the position, and thus cannot establish a *prima facie* case, because a requisite qualification for the job was status as an internal candidate. This court need not reach Defendant's argument here because, for the reasons explained above, Ms. Johnson's claims fail in the second stage of the McDonnell Douglas analysis because the School District has advanced a legitimate nondiscriminatory reason for its employment action and Ms. Johnson has failed to offer any evidence that the reason is pretextual.[3] For the foregoing reasons, the Defendant's Motion for Summary Judgment is GRANTED. An appropriate Order follows.

---

[3]Plaintiff makes an argument that the School District's employment actions in this case are consistent with past discrimination, based on a prior incident of the School District's having lost or misplaced an application of an African-American candidate and based on the fact that no African-American has ever been hired for a principal's or vice principal's position in the Rose Tree Media School District. (Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 18.) Plaintiff fails to establish a connection between the School District's alleged single-incident history of discrimination and the School District's reason for not hiring Ms. Johnson and, thus, fails to produce any evidence that the reason given is pretextual.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIAN N. JOHNSON, : CIVIL ACTION

Plaintiff, : NO. 06-3761

v.

ROSE TREE MEDIA SCHOOL DISTRICT,

Defendant.

FILED
OCT - 1 2008
MICHAEL E. KUNZ, Clerk
By________Dep. Clerk

**ORDER**

AND NOW, this 30th day of September, 2008, upon consideration of Defendant Rose Tree Media School District's Motion for Summary Judgment (Docket No. 29), Plaintiff Marian N. Johnson's Response in Opposition to Summary Judgment (Docket No. 31), Rose Tree School District's Reply Brief (Docket No. 32), Plaintiff's Surreply Brief (Docket No. 33), it is hereby ORDERED that Defendant Rose Tree School District's summary judgment motion is GRANTED for the reasons set forth in the attached memorandum.

Summary Judgment is GRANTED in Rose Tree School District's favor on the following:

1. Plaintiff's claim of discrimination on the basis of disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.;

2. Plaintiff's claims of discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

BY THE COURT:

JAMES T. GILES J.

ENTERED
OCT - 1 2008
CLERK OF COURT